IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| AYESHA MCKINNEY, TRACINA ROSS, and TAMMY BLOOMER,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, and DENNIS BRESNAHAN, individually and in his official capacity,<br><br>Defendants. | 0:17-cv-04156-RWP-HCA<br><br><br><br><br><br>ORDER DENYING MOTION TO COMPEL DISCOVERY |

## I.  INTRODUCTION

Before the Court is Plaintiffs' Motion to Compel Discovery, filed on August 28, 2020. Pls. Motion to Compel, ECF (No. 114). Plaintiffs seek to compel discovery from both Defendant Dennis Bresnahan ("Bresnahan") and the Government. *Id.* The Government filed its Resistance on September 15, 2020. Def. Response, ECF (No. 131). Defendant Bresnahan did not file a response. The Court heard oral arguments on the Motion on October 14, 2020. ECF (No. 136). The Court considers the matter fully submitted.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the alleged acts of former United States Probation Officer Dennis Bresnahan. In Plaintiffs' Third Amended Complaint filed on July 17, 2018, Ayesha McKinney, Tracina Ross, and Tammy Bloomer ("Plaintiffs") each allege that Bresnahan sexually harassed and assaulted them in a tortious manner while he was their probation officer. Pls. Third Amended Complaint, ECF (No. 38 ¶¶ 22-98). Plaintiffs brought claims of assault, battery, and abuse of process against the United States through the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, asserting that Bresnahan was a federal law enforcement officer

acting within the scope of his employment when he committed these tortious acts. *Id.* ¶¶ 12-15. Plaintiffs also bring constitutional claims against Bresnahan in his individual capacity. *Id.* ¶¶ 89-91. A Stipulated Protective Order is in place which governs the production of protected materials in this case. ECF (No. 78).

Plaintiffs served both Defendants with written discovery requests on April 29, 2019. Pls. Brief., ECF (No. 116 at 2). At the time Plaintiffs filed the Motion, Bresnahan had failed to respond to Plaintiffs' request. *Id.* On July 30, 2020 the Government responded to Plaintiffs' request by producing 836 pages of documents from the Federal Bureau of Investigation's ("FBI") investigation of Bresnahan's conduct. USA Response, ECF (No. 131 at 2). The Government states that "[c]ertain documents were redacted pursuant to the informant and law enforcement privileges." *Id.* The Government provided Plaintiffs with a privilege log, which has been filed under seal. Pls. Declaration in Support, ECF (No. 124-1). Plaintiffs state that certain documents are redacted so heavily that they are incomprehensible, so they requested the Government unredact portions. ECF (No. 116 at 2). The Parties were unable to reach an agreement. ECF (No. 131 at 2). Plaintiffs subsequently filed this Motion to Compel the Defendants to fully respond to their discovery requests. ECF (No. 114).

At the Motion Hearing held on October 14, 2020, Plaintiffs' Counsel stated that since the filing of the Motion, Bresnahan had adequately responded to their discovery requests. Following the Hearing, the Court entered a Text Order finding the Motion moot as to Defendant Bresnahan. ECF (No. 138). Therefore, the Court considers the Motion only as to the Government.

### III.  LEGAL STANDARD AND ANALYSIS

Plaintiffs ask this Court to order the Government to produce the FBI documents unredacted under Federal Rule of Civil Procedure 26(b)(1) because the redacted information is material and relevant to advancing the case.[1] Federal Rule of Civil Procedure 26(b)(1) states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Civ. P. 401.

Plaintiffs specifically argue that:

> [T]he documents withheld or redacted by the FBI are material and relevant for the fair processing of this case. First, the same probation office staff that the FBI interviewed regarding Defendant Bresnahan's inappropriate conduct during his employment with the Government are material and relevant in this case. Second, Defendant Bresnahan's conduct with Plaintiffs and other victims are also at issue in this case. Third, record shows that the FBI confronted Defendant Bresnahan with witnesses' statements during its criminal investigation of Defendant Bresnahan. Those witnesses and the summaries of their statements, including Bresnahan's statements are material in this case.

ECF (No. 116 at 8). Plaintiffs also state they "need summaries of the FBI's witnesses interview[s], Form 302s, to properly prepare for depositions." *Id.* at 3. Plaintiffs filed the FBI documents under seal for the Court to review. Pls. Declaration in Support, ECF (No. 124-2). In sum, Plaintiffs contend that the unredacted FBI documents are essential to further the progression of their case.

---

1. The Court notes that Plaintiffs also cite to Federal Rules of Civil Procedure 33, 34, and 37 in addition to Rule 26. ECF (No. 116 at 2). The Court focuses on Rule 26, because Plaintiffs based their arguments on it.

The Government argues that the information Plaintiffs seek is protected under both the informant and law enforcement privileges and therefore is not subject to Rule 26. Plaintiffs do not contest the FBI's right to protect the identities of confidential informants or to safeguard information related to its investigatory processes. Plaintiffs do not argue that the privileges do not apply. Instead, Plaintiffs argue that the witnesses themselves are not privileged because they did not expect their statements to be held in confidence. Plaintiffs' Counsel directed the Court to several summaries of FBI interviews where the witnesses did not expressly request anonymity. Plaintiffs' Counsel did not point to, and nor was the Government's Counsel aware of, any caselaw that suggests witnesses in an FBI investigation need to affirmatively assert their desire to be kept anonymous.[2] The Court analyzes the applicability of both the informant's and law enforcement privileges in turn.

A. *The Informant's Privilege*

The informant's privilege allows the Government "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege serves to protect "the public interest in effective law enforcement." *Id.* When the anonymity of individuals who cooperate with law enforcement officials is protected, those individuals are

---

2  The FBI's website states the following on its "Frequently Asked Questions" page:

> Can I obtain detailed information about a current FBI investigation that I see in the news? No. Such information is protected from public disclosure, in accordance with current law and Department of Justice and FBI policy. This policy preserves the integrity of the investigation and the privacy of individuals involved in the investigation prior to any public charging for violations of the law. It also serves to protect the rights of people not yet charged with a crime.

Federal Bureau of Investigation, *Frequently Asked Questions*, (2020) https://www.fbi.gov/about/faqs. The Court concludes that this would lead someone cooperating with the FBI to assume their identity will be kept confidential.

more likely to disclose knowledge of crimes with law enforcement. *Id.* at 59. The privilege is limited. *Id.* at 60-61. ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."). In a civil case, the party seeking an informant's identity must show "a clear need . . . weighed against the government's interest in protecting confidential informants' identities." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1052-54 (8th Cir. 2007). Further, "the government's interest is more likely to prevail in civil cases." *Id.*

        The United States offers the Declaration of Travis Carlisle, Deputy Assistant Director of the Intelligence Operations Branch of the FBI Directorate of Intelligence, in support of its assertion of the informant's privilege. Declaration of Travis Carlisle, (ECF 131-2). Mr. Carlisle has held a variety of positions at the FBI, starting in 2001. *Id.* at 1-2. Mr. Carlisle explains that a Confidential Human Source ("CHS") aided the FBI in its investigation and the CHS has not agreed to disclosing his or her identity or the underlying information the CHS provided to the FBI. *Id.* at 4. Portions of the documents the FBI produced are marked with deletion code "CHS"[3] to indicate where redactions were made to protect the CHS's identity. Carlisle asserts that disclosing the CHS's identity "would negatively impact the FBI's ability to continue to use and cultivate confidential informants, as well as jeopardize the safety of informants, their families, and FBI personnel." *Id.* at 5.

---

3 The Court will refer to this code and the subsequent code as such for ease of reference. The Court does not reference the deletion code the FBI actually used so as to preserve investigational integrity.

The Government argues it has properly asserted the privilege and Plaintiffs have failed to show a "clear need" for the disclosure of the CHS's identity, and it stresses the importance of keeping the identity confidential. Plaintiffs do not contest that the FBI is entitled to protect certain information. Plaintiffs assert that their need for access to the underlying information in the FBI interview summaries outweighs the importance of preserving the CHS's identity.

The Court finds that the identity of the CHS is protected under the informant's privilege, and Plaintiffs have failed to show a clear need for the CHS's identity that outweighs the Government's interest in keeping that identity confidential. The CHS deletion code is only used on a few pages of the documents that were produced by the FBI. While those portions of the documents are heavily redacted, this was done to protect the identity of the CHS. The Court agrees with the Government that preserving the anonymity of the CHS is essential to ensuring individuals feel comfortable cooperating with the FBI in the future. This is especially true in investigations of a sensitive nature such as in the present case.

The Plaintiffs have not shown a clear need to compel unredacted copies of the FBI documents with the CHS deletion code in light of the serious need to keep the information confidential. This is especially true given the fact that the informer's privilege is stronger in civil cases such as this. Further, the Court has reviewed the declaration Mr. Carlisle filed under seal and determines Plaintiffs likely have access to the underlying information they seek through means other than the FBI investigatory documents, such as the deposition of Defendant Bresnahan. As such, the Court will not compel the Government to unredact the information covered under the CHS code.

### B. *The Law Enforcement Privilege*

The Government argues that the vast majority of the redacted information is protected under the law enforcement privilege, marked with deletion code "LIP." The law enforcement privilege is a legal doctrine that has been adopted by several Circuit Courts. *In re The City of New York*, 607 F.3d 923, 942 (2d Cir. 2010). *See also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007), *cert denied* 128 S.Ct. 1738 (2008); *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570-71 (5th Cir. 2006); *Tuite v. Henry*, 181 F.R.D. 175, 176-185 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999). The law enforcement privilege grew out of the informant's privilege; it extends beyond protecting the identities of confidential informants to protect investigatory documents and processes. *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570-71 (5th Cir. 2006). "The law enforcement investigatory privilege is a qualified privilege that is designed, in part, 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *Ramirez v. Clinton*, No. CV No. 8-5770 (DSD/JSM), 2010 WL 11646629, at *4 (D. Minn. June 18, 2010) (quoting *El Badrawi v. Department of Homeland Sec.*, 258 F.R.D. 198, 203 (D. Conn. 2009)).

Once the privilege has been established,[4] some courts employ a balancing test to weigh "the public interest in nondisclosure against 'the need of a particular litigant for access to the

---

4 To establish the privilege, the Government must show:

> Specifically, the party asserting the privilege must show that the documents in question contain (1) information pertaining to 'law enforcement techniques and procedures,' (2) information that would undermine "the confidentiality of sources," (3) information that would endanger 'witness and law

7

privileged information.'" *In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) (stating there is a presumption against lifting the privilege). Other courts apply the "oft-cited *Frankenhauser* test."[5] At the heart of either analysis is whether a party has shown their need for information outweighs the Government's interests in protecting the information.

The Eighth Circuit has not explicitly adopted the law enforcement privilege; but the court has upheld lower court decisions that refused to compel production of Government investigatory processes. *United States v. Hoeffener*, 950 F.3d 1037, 1044 (8th Cir. 2020) (finding the Government's interest in protecting the source code of its software programs outweighed Defendant's need to understand how it was applied to him); *United States v. Jean*, 891 F.3d 712, 715 (8th Cir.), *cert. denied*, 139 S. Ct. 440 (2018) (upholding the lower court's finding that preventing the disclosure of a complete source code used by the government greatly outweighed

---

enforcement personnel,' (4) information that would undermine "the privacy of individuals involved in an investigation," or (5) information that would seriously impair 'the ability of a law enforcement agency to conduct future investigations.'

*In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) (internal citations omitted). The Court finds the Government has established that the information at issue in this case is privileged. *See* Def. Response, ECF (No. 131, 8-12).

5  The test weighs the following factors:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006).

a criminal defendant's need for the code). The Eighth Circuit has held one of the most important factors to consider when determining whether to order disclosure of information is "whether or not the evidence is *material* to the accused defense." *Hoeffener*, 950 F.3d at 1043 (emphasis in original).

In the present instance, the Court will "balance the need of the litigant who is seeking the privileged materials against the harm to the government if the privilege is produced." *Ramirez*, 2010 WL 11646629, at *4-5. If the Court finds the un-redacted FBI documents are relevant and important to the Plaintiffs' case as to outweigh the danger of "weakening of law enforcement programs and any chilling effect on internal investigative candor" it will compel production. *Id.*

The Court first addresses the Government's arguments against production of the unredacted information. According to Mr. Carlisle's declaration, the FBI's criminal investigation of Bresnahan is closed, and important investigatory documents were never disclosed to him or the public because he pleaded guilty to a criminal charge as opposed to taking his case to trial. Declaration of Travis Carlisle, (ECF 131-2, at 3). Further, Mr. Carlisle explains that the FBI's criminal file "includes extremely sensitive and personal information, to include pornographic photographs of some of the witnesses." *Id.* In particular, the FBI has withheld:

> portions of the reports of witness interviews that reflect personally identifying information that, if disclosed to Bresnahan or other individuals, could further victimize these witnesses, most of the whom are not plaintiffs in this case and may not even be aware their personal information is at risk of disclosure through this litigation."

*Id.* It is clear from the record the information withheld under the law enforcement privilege is deeply sensitive in nature.

Mr. Carlisle emphasizes the need for victims and witnesses to trust the FBI will protect their confidentiality, he explains this is magnified in cases such as this where victims and witnesses are sharing details of a sexual nature with investigators. *Id.* The Government asserts the underlying information is not inherently privileged, those individuals who cooperated with the FBI are free to discuss details of their experiences with the press or anyone that they wish to share them with. The FBI maintains it is essential to the integrity of the Agency and its investigative processes for it to keep this information confidential.

The Plaintiffs argue their need for the unredacted documents outweighs the Government's interest in keeping certain information confidential. Plaintiffs assert they need the information to show the Government was on notice that Defendant Bresnahan would tortiously assault Plaintiffs. Pls. Brief., ECF (No. 116 at 4-5). Plaintiffs seek to know whether Bresnahan acted inappropriately toward other probationers, and if so the identities of those individuals. *Id.* According to Plaintiffs, this will help them prove that sexual harassment or assault of probationers is a well-known risk of the probation profession. *Id.*

The Court finds Plaintiffs' arguments unpersuasive. First, proving prior specific instances of harm by Bresnahan is not necessary for the Government to be found liable under a respondeat superior claim. *See Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 912-13 (Minn. 1999). The Minnesota Supreme Court has found that while specific instances of prior misconduct may be relevant to finding direct liability, respondeat superior focuses more on "public policy rather than from any fault of the employer." *Id.* For the Government to be held liable for Bresnahan's conduct, Plaintiffs must show sexual assault or harassment by a probation

10

officer toward a probationer is a well-known hazard of the profession such that it would be fair to hold the Government liable for its employee's actions. *See id.*

While the Court understands it could be marginally helpful for Plaintiffs to know the names and circumstances of other potential victims of Bresnahan, this does not undermine those individual's expectation that they would be kept confidential. Mr. Carlisle indicated many of the victims and witnesses interviewed by the FBI are not plaintiffs in the case and may not be aware that their information is at risk of being shared in this litigation. Declaration of Travis Carlisle, (ECF 131-2, at 3). The FBI was entrusted by witnesses and victims with information about Bresnahan's alleged misconduct. The Court refuses to break that trust by compelling the FBI to unredact the documents it produced. The FBI's interest in protecting the information and preserving public trust outweighs the Plaintiffs' desire to have access to FBI interviews.

Even if the law enforcement privilege did not apply, the information sought is not relevant and proportional to the needs of the case. Whether Bresnahan acted inappropriately towards probationers other than the Plaintiffs is minimally relevant to proving that such misconduct is a foreseeable risk of the probation officer profession. To the extent that it is relevant, a deep dive into FBI investigatory files that may or may not contain information the Plaintiffs seek is not proportional to the needs of this case. This is especially true given that Plaintiffs may depose Defendant Bresnahan about other improper behavior and also depose relevant US Probation Office witnesses about any knowledge they had, if any, regarding the alleged improper behavior by Defendant Bresnahan.

## IV. CONCLUSION

For the aforementioned reasons, the Plaintiffs' Motion to Compel (ECF 114) is **denied**.

IT IS SO ORDERED.

Dated December 14, 2020.

_____
Helen C. Adams
Chief U.S. Magistrate Judge