IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| AYESHA MCKINNEY and TRACINA ROSS, | * * * * | |
| Plaintiffs, | * * | 17-cv-4156 |
| v. | * * | |
| UNITED STATES OF AMERICA and DENNIS BRESNAHAN, individually and in his official capacity, | * * * * | ORDER |
| Defendants. | * * | |

Before the Court are Defendant United States of America's Motion to Exclude Expert

Testimony of Dr. John Patrick Cronin, ECF No. 165, and Motion for Summary Judgment, ECF

No. 172, and Defendant Dennis Bresnahan's Motion for Summary Judgment, ECF No. 179.

Plaintiffs Ayesha McKinney and Tracina Ross resist the Motions.  ECF Nos. 184, 186, 188.

Defendants have filed their respective Replies.  ECF Nos. 197, 198, 200.  The Court heard oral

arguments on the Motions on August 11, 2021.  *See* ECF No. 208.  The matters are fully

submitted.

I.  PROCEDURAL BACKGROUND[1]

On September 6, 2017, Plaintiffs McKinney and Ross filed a Complaint against the

United States of America seeking to recover damages in the amount of three million dollars

under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671–2680.  ECF No. 1.

---

[1] The Court recited Plaintiffs' factual allegations in its July 2, 2018 Order and will not restate them here.  The Court acknowledges that Plaintiffs amended their Complaint for a third time following the Court's Order and that the Court's earlier rendition of the facts was based on a now-inoperable pleading.  Nevertheless, Plaintiffs' factual allegations remained largely unchanged between Plaintiffs' Second and Third Amended Complaints.  *Compare* ECF No. 14 ¶¶ 11–58, *with* ECF No. 38 ¶¶ 22–70.

On October 17, the Complaint was amended to add another plaintiff who has since been dismissed from this action.  ECF Nos. 6, 164.  On November 6, Plaintiffs filed a Second Amended Complaint, alleging Defendant Bresnahan committed tortious actions against each of them by sexually assaulting and harassing them while he was their U.S. Probation Officer.  ECF No. 14.

The Government moved for dismissal of Plaintiffs' Second Amended Complaint, arguing that this Court lacked subject-matter jurisdiction.  ECF No. 19.  The Court granted the Government's motion concluding it did not have jurisdiction over Plaintiffs' claims for negligent supervision, assault, abuse of process, and intentional infliction of emotional distress.  ECF No. 37 at 8, 11, 13.  The Court also dismissed Plaintiffs' other unspecified torts for failure to state a claim to relief.  *Id.* at 14.  Nevertheless, the Court granted Plaintiffs leave to amend their Complaint again to correct deficiencies identified by the Court in its Order.  *Id.*

On July 17, 2018, Plaintiffs filed their Third Amended Complaint alleging that the Government was liable under the FTCA based on the Minnesota common-law torts of assault, battery, and abuse of process[2] and that Defendant Bresnahan was liable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), based on his alleged violations of the Fourth and Eighth Amendments of the U.S. Constitution.  ECF No. 38 ¶¶ 89–91, 92–98.  The Government again moved to dismiss Plaintiffs' claims arguing the Court lacked subject-matter jurisdiction.  ECF No. 46.  The Court denied the Government's motion after concluding Plaintiffs had sufficiently alleged that Defendant Bresnahan was a federal law

---

[2] In its pending Motions, the Government states Plaintiffs also allege a claim for intentional infliction of emotional distress in their Third Amended Complaint.  ECF No. 166 at 2; ECF No. 173 at 2.  As this Court has previously noted, Plaintiffs did not reassert a claim for intentional infliction of emotional distress in their Third Amended Complaint.  *See* ECF No. 59 at 2 n.1.  Therefore, the Government's Motion for Summary Judgment as to this issue is denied as moot.

2

enforcement officer acting within the scope of his employment, as defined by Minnesota law, when he committed the alleged intentional torts of assault, battery, and abuse of process and thus Plaintiffs' claims were not barred by the intentional-tort exception to the FTCA because they fell within the law enforcement proviso.  ECF No. 59 at 4–5.

The Government now moves for summary judgment arguing Plaintiff McKinney has failed to meet her burden of proof as to any of her claims and Plaintiff Ross has failed to meet her burden as to her claim of abuse of process.  ECF No. 172.  The Government also moves to exclude the causation testimony of Plaintiffs' expert Dr. John Patrick Cronin and testimony regarding Dr. Cronin's opinion as to the scope of employment of probation officers.  ECF No. 165.

Defendant Bresnahan moves for summary judgment as to all of Plaintiffs' claims arguing that *Bivens* does not extend to Plaintiffs' claims against him and that, if the Court grants the Government's Motion for Summary Judgment, then Plaintiffs' claims against Defendant Bresnahan are barred by 28 U.S.C. § 2676.  ECF No. 179.

## II.  STANDARD OF REVIEW

"[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances."  *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976).  The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try."  *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (quoting *Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620, 627 (1944)).  Rather, it is designed to "avoid[] useless, expensive and time-consuming trials where there is actually no genuine,

factual issue remaining to be tried."  *Anderson v. Viking Pump Div.*, *Houdaille Indus.*, *Inc.*, 545
F.2d 1127, 1129 (8th Cir. 1976).

Federal Rule of Civil Procedure 56(a) provides, "A party may move for summary
judgment, identifying each claim or defense—or the part of each claim or defense—on which
summary judgment is sought."  Rule 56(a) mandates the entry of summary judgment upon
motion after there has been adequate time for discovery "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
law."  Summary judgment is proper when the record, viewed in the light most favorable to the
nonmoving party and giving that party the benefit of all reasonable inferences, shows there is no
genuine issue of material fact and the moving party is therefore entitled to judgment as a matter
of law.  *See* Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994).  A
disputed issue is "genuine" when the evidence produced "is such that a reasonable jury could
return a verdict for the nonmoving party."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986).  A fact is considered "material" if it "might affect the outcome of the suit under the
governing law."  *See id.*  "[T]he substantive law will identify which facts are material . . . .
Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

"In considering a motion for summary judgment the court does not weigh the evidence,
make credibility determinations, or attempt to discern the truth of any factual issue."  *Great
Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943–44 (8th Cir.
2008) (citation omitted).  Rather, the court only determines whether there are any disputed issues
concerning the existence of material facts and, if so, whether those disputes are genuine.  *See
Anderson*, 477 U.S. at 251–52; *see also Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987)

("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.").  Summary judgment is appropriately entered against a party who has failed to make a showing sufficient to establish a genuine dispute as to the existence of an element essential to its case and upon which the party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When a summary judgment motion is filed, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any.  *See id.* at 323; *Anderson*, 477 U.S. at 248.  If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial.  *See* Fed. R. Civ. P. 56(c).  This additional showing can be by affidavits, depositions, answers to interrogatories, or admissions in the record.  *Id.*; *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 257.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48.  Indeed, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy."  *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second and third alterations in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir. 2003)).  Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact."  *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010).

Courts do not decide whether to grant a motion for summary judgment by conducting a paper trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). To be sure, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Id.* Rather, in considering a motion for summary judgment, the court's task is merely to decide, based on the evidentiary record that accompanies the filings of the parties, whether there really is any genuine issue concerning a material fact that still requires a trial. *Id.* (citing *Anderson*, 477 U.S. at 249 and 10 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2712 (3d ed. 1998)); *see also* Fed. R. Civ. P. 56(c)(3).

## III.  ANALYSIS

### A.  The Government's Motion to Exclude Expert Testimony

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993), this Court acts as a gatekeeper to ensure "the expert's methodology is reliable and can be reasonably applied to the facts of the case." *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (citation omitted). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is

6

scientifically valid.'" *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010) (citation

omitted). This Court has discretion in deciding "[w]hether to admit expert testimony." *Bartak v.*

*Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir. 1980).

1. Dr. Cronin's Causation Testimony

The Government argues the Court should exclude Dr. Cronin's causation testimony

because his medical opinions lack an adequate factual basis, are not the product of reliable

principles and methodology, and depart from widely accepted standards of practice.

Specifically, the Government contends Dr. Cronin failed to review Plaintiffs' full medical

histories, which is a significant departure from accepted standards of practice and prevented

Dr. Cronin from considering other potential causes for Plaintiffs' injuries, making Dr. Cronin's

testimony unreliable. The Government also contends that Dr. Cronin's opinion is based

primarily on subjective, rather than objective, psychological assessments and that Dr. Cronin

statistically invalidated the only objective test he used. The Government further argues the

subjective information Dr. Cronin obtained from Plaintiffs' family members is insufficient on

which to base an opinion as to causation. Additionally, the Government contends Dr. Cronin

applied the wrong diagnostic standard for PTSD, which is a departure from the accepted

methodology, and therefore his opinion is unreliable and inadmissible for this reason as well.

The Court's gatekeeping role is especially important in jury trials "to protect [lay] juries

from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab.*

*Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)). But "[w]hen the district court sits as the finder of fact,

'[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate

only for himself.'" *David E. Watson, P.C.*, 668 F.3d at 1015 (second alteration in original)

(quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 613). Thus, the standard is relaxed for bench trials such as in this FTCA case. *Id.*

Although the Government has raised valid concerns about the credibility of Dr. Cronin's conclusions, those concerns ultimately go to the weight of the evidence, not its admissibility. *See David E. Watson, P.C.*, 668 F.3d at 1015. "Vigorous cross-examination [and] presentation of contrary evidence . . . are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Given the relaxed *Daubert* standard for bench trials, the Court concludes Dr. Cronin's causation testimony is admissible.

2. Dr. Cronin's Scope-of-Employment Testimony

The Government also argues the Court should exclude Dr. Cronin's testimony as to whether Defendant Bresnahan's conduct was within the scope of his employment as a probation officer because such testimony is beyond Dr. Cronin's expertise. The Government contends Dr. Cronin has no experience, background, or training in the field of pretrial or postconviction supervision and therefore he is not qualified as an expert in this field.

It is this Court's responsibility as gatekeeper to "ensur[e] that [an expert's] actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, *Kumho Tire* [*Co. v. Carmichael*, 526 U.S. 137 (1999)], and related precedents." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). In this case, Plaintiffs assert that, because Dr. Cronin has "experience[] in treating probation and correction officers," he is qualified to testify as to the scope of a probation officer's employment in this case. ECF No. 194 at 16. If all any expert needs in order to be qualified in a particular field is unquantified experience in treating patients or working with clients who themselves work in that field, the expert could potentially be

qualified in *every* field.  That cannot be the standard.  Testimony from such a witness simply could not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  "[A]n expert, whether basing testimony upon professional studies or personal experience, [must] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co.*, 526 U.S. at 152. Plaintiffs have not demonstrated by a preponderance of the evidence that Dr. Cronin, a psychologist, has sufficient "knowledge, skill, experience, training, or education" in the relevant field to qualify as an expert and testify as to whether Defendant Bresnahan's conduct was within the scope of his employment.  Accordingly, Dr. Cronin's testimony as to scope of employment is excluded.

### B.  The Government's Motion for Summary Judgment

The Government moves for summary judgment on Plaintiff McKinney's claims of assault, battery, and abuse of process.  The Government moves for partial summary judgment as to Plaintiff Ross's claim for abuse of process.

### 1.  Plaintiff McKinney's Assault Claim

The Government argues Plaintiff McKinney has failed present evidence of an assault under Minnesota law.  To prove the tort of assault in Minnesota, a plaintiff must demonstrate an "(1) unlawful threat of *bodily harm* to another (2) with the *present ability to effectuate the threat*."  *Olson v. LaBrie*, No. A12-1388, 2013 WL 1788531, at *6 (Minn. Ct. App. Apr. 29, 2013) (emphasis added) (citing *Dahlin v. Fraser*, 288 N.W. 851, 852 (1939)).  "Mere words or threats alone do not constitute assault."  *Dahlin*, 288 N.W. at 852.  Minnesota law "requires a show of force that caused 'reasonable apprehension of immediate bodily harm.'"  *Nelson v.*

*Comerica Bank & Tr., NA*, No. A19-1817, 2020 WL 3637931, at *4 (Minn. Ct. App. July 6, 2020) (quoting *Dahlin*, 288 N.W. at 852).

Plaintiff McKinney premises her claim of assault on Defendant Bresnahan's statement to her that, "You don't know who you're fucking with."  Plaintiff McKinney alleges this statement constituted a threat.  The Court agrees the statement is threatening.  However, Plaintiff McKinney has failed to present any evidence that Defendant Bresnahan's threat was accompanied by a showing of force such that she was reasonably apprehensive he would immediately cause her bodily harm.  *See, e.g.*, *Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F. Supp. 393, 408 (D. Minn. 1996).  Therefore, the Court grants the Government's Motion as to Plaintiff McKinney's claim of assault.

2.  Plaintiff McKinney's Battery Claim

The Government argues Plaintiff McKinney has failed to present evidence of a battery.  In Minnesota, the tort of battery requires "an intentional unpermitted offensive contact with another."  *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980) (citing *Schumann v. McGinn*, 240 N.W.2d 525, 529 (Minn. 1976) ("The essential elements of the tort of battery are intent and contact.")).

At oral argument, Plaintiff McKinney conceded she has no evidence Defendant Bresnahan ever touched her, i.e., she has no evidence of the required element of contact.  Instead, Plaintiff McKinney asserts a novel claim that Defendant Bresnahan *indirectly* battered her by pressuring her to remove her clothes and take nude pictures of herself, resulting in a self-inflicted battery.  This argument is without merit.  The law is clear that a battery requires "an intentional unpermitted offensive contact with another."  *Paradise*, 297 N.W.2d at 155.  There is no evidence in the record that Defendant Bresnahan impermissibly and offensively touched Plaintiff

10

McKinney.  Therefore, the Court grants the Government's Motion as to Plaintiff McKinney's claim of battery.

3.  Plaintiffs' Claims for Abuse of Process

The Government argues neither Plaintiff has presented any evidence to support their claims for abuse of process.  In Minnesota, "[t]he essential elements for . . . abuse of process are the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not."  *Dunham v. Roer*, 708 N.W.2d 552, 571 (Minn. Ct. App. 2006) (citation omitted).  "[T]he test is whether the process was used to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally required to do."  *Id.* (alteration in original) (citation omitted).

In the Third Amended Complaint, Plaintiff McKinney alleges Defendant Bresnahan abused a legal process by switching drug tests so that she would test positive for cocaine.  ECF No. 38 ¶¶ 3, 26, 27 ("Defendant Bresnahan subjecting Plaintiff McKinney to a false test result was intentional abuse of process . . . ."), 32 ("[Defendant] Bresnahan alleged that [Plaintiff] McKinney had tested positive for cocaine [on three more occasions].  Defendant Bresnahan knew that his actions were unlawful because the test results were false. . . .  Defendant Bresnahan abused the court's legal process.").  Plaintiff McKinney has failed to produce any evidence showing that Defendant Bresnahan manipulated the results of her drug tests or that he knew the drug test results were false and attempted to use them for an ulterior purpose.

Both Plaintiffs allege Defendant Bresnahan abused the entire *process* of their court-ordered supervision.  *Id.* ¶¶ 96, 97.  The Minnesota Supreme Court has defined "process" as "[t]he proceedings in any action or prosecution; a summons or writ, esp. to appear or respond in

11

court." *Eclipse Architectural Grp. v. Lam*, 814 N.W.2d 692, 697 (Minn. 2012) (quoting *Process*, *Black's Law Dictionary* 1325 (9th ed. 2009)).  The court continued: "[p]rocess is so denominated because it *proceeds* or issues forth in order to bring the defendant into court, to answer the charge preferred against him, and signifies the writs or judicial means by which he is brought to answer." *Id.* (alteration in original) (quoting *Process*, *Black's Law Dictionary*).  Plaintiff McKinney's pretrial supervision and Plaintiff Ross's postconviction supervised release are not *processes*, as defined above, that Defendant Bresnahan could have used for his own unlawful purpose.  Defendant Bresnahan took advantage of his position as Plaintiffs' assigned probation officer for his own personal gain, but their court-ordered supervision was not a *process* that he used to compel Plaintiffs to court.  *See Eclipse Architectural Grp.*, 814 N.W.2d at 697; *see also Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995) ("Typical abuse of process cases involve misuse of such procedures as discovery; subpoenas; and attachment." (citations omitted)); *Pow-Bel Constr. Corp. v. Gondek*, 192 N.W.2d 812, 814 (Minn. 1971) (examining whether the legal process of garnishment was abused); *Hoppe v. Klapperich*, 28 N.W.2d 780, 787 (Minn. 1947) (concluding that threatening arrest and prosecution unless the plaintiff gave up an envelope and its contents constituted an abuse of process); *Dunham*, 708 N.W.2d at 571–72 (determining whether a party's applications to the courts and police for the establishment and enforcement of restraining orders constituted an abuse of process).  Accordingly, the Court grants the Government's Motion for Summary Judgment as to Plaintiffs' claims of abuse of process.

### C.  Defendant Bresnahan's Motion for Summary Judgment

1.  Plaintiffs' Claims Against Bresnahan in his Official Capacity

Plaintiffs' official-capacity claims against Defendant Bresnahan must be treated as claims against the United States.  *See Lewis v. Clarke*, ___ U.S. ___, ___, 137 S. Ct. 1285, 1291 (2017);

*Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998).  "Sovereign immunity protects the United States from being sued unless Congress has expressly waived the government's immunity."  *Kaffenberger v. United States*, 314 F.3d 944, 950 (8th Cir. 2003).  "It is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity."  *Buford*, 160 F.3d at 1203.  Accordingly, Plaintiffs' official-capacity claims against Defendant Bresnahan are barred.

2.  Plaintiffs' Claims Against Bresnahan in his Individual Capacity

Plaintiffs allege Defendant Bresnahan violated their "right to be secure in their persons" under the Fourth Amendment and their right to be "free from cruel [and] unusual punishment" under the Eighth Amendment.  ECF No. 38 ¶ 91.  The Eighth Circuit has instructed there are two steps courts must take in determining whether an implied cause of action under *Bivens* is available.  *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019).  First, the Court must ascertain whether this case "present[s] one of 'the three *Bivens* claims the [Supreme] Court has approved in the past' or whether, instead, allowing [Plaintiffs] to sue would require [the Court] to extend *Bivens* to a 'new context.'"  *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. ___, ___, 137 S. Ct. 1843, 1859–60 (2017)).  A context is regarded "as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'"  *Hernandez v. Mesa*, ___ U.S. ___, ___, 140 S. Ct. 735, 743 (2020) (citation omitted); *see also Abbasi*, 137 S. Ct. at 1859–60 (listing factors courts should consider in determining whether "differences . . . are meaningful enough to make a given context a new one").  Second, if the Court determines the context is new, it must "ask whether any 'special factors counsel[] hesitation' before implying a new cause of action 'in the absence of affirmative action by Congress.'"  *Farah*, 926 F.3d at 498 (quoting *Abbasi*, 137 S.

13

Ct. at 1857). "[T]he [Supreme] Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (citation omitted).

Plaintiffs' allegations of sexual assault perpetrated by their assigned federal probation officer are meaningfully different from the claims permitted in *Bivens*, 403 U.S. at 388, *Carlson v. Green*, 446 U.S. 14 (1980), and *Davis v. Passman*, 442 U.S. 228 (1979), and therefore present a new context. Although, like this case, *Bivens* involved a claim under the Fourth Amendment, that claim was made against federal narcotics agents for a warrantless search and illegal arrest at the plaintiff's home. *See* 403 U.S. at 389. "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (quoting *FDIC v. Meyer*, 510 U.S. 471, 484 n.9 (1994)); *see Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). Plaintiffs' claims do not involve unreasonable searches and seizures, illegal arrests, or even federal narcotics agents; therefore, it is meaningfully different from *Bivens*. For obvious reasons, this case also differs from *Davis*, which permitted a congressional employee to sue a congressman for unlawful employment termination in violation of the Fifth Amendment's Due Process Clause. 442 U.S. at 248–49. Finally, Plaintiffs' claims differ from those in *Carlson*, because while *Carlson* involved claims under the Eighth Amendment against federal prison officials for failure to provide medical treatment, 446 U.S. at 16–18, this case involves claims against a probation officer for sexual assault while Plaintiffs were under supervision. Plaintiffs' "claims bear little resemblance to the three *Bivens* claims the [Supreme] Court has approved in the past"; therefore, this case presents a new *Bivens* context. *Abbasi*, 137 S. Ct. at 1860; *see also Farah*, 926 F.3d at 498 (concluding a case raised a new

claim because "[n]o Supreme Court case exactly mirrors the facts and legal issues presented here").

Having determined Plaintiffs' claims arise in a new context, the Court proceeds to the second step and examines "whether there are any 'special factors [that] counse[l] hesitation' about granting the extension." *Hernandez*, 140 S. Ct. at 743 (alterations in original) (quoting *Abbasi*, 137 S. Ct. at 1857). This analysis focuses "on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed" against federal officers. *Abbasi*, 137 S. Ct. at 1857–58. In general, Congress is better suited to authorize a damages suit. *Farah*, 926 F.3d at 498.

Special factors counsel against extending *Bivens* in this context. For one, the FTCA provides a potential, alternative remedy for Plaintiffs and weighs against expansion of a *Bivens* remedy. *See Abbasi*, 137 S. Ct. at 1865 ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."). "[T]he alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would." *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012)). Indeed, even if "the FTCA might not give [the plaintiff] everything he seeks[, there] is . . . no reason to extend *Bivens*." *Id.* (first alteration in original) (citing *Hernandez*, 140 S. Ct. at 750); *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988) ("The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). The FTCA is available as an alternative remedy, even if Plaintiffs do not ultimately recover under it. *See Oliveras v. Basile*, 440 F. Supp. 3d 365, 374 (S.D.N.Y. 2020) (finding the FTCA was an alternative remedy and, thus, a special factor counseling hesitation, even though the FTCA's discretionary-function

exception barred the claims and the plaintiff was left "entirely without a remedy").  Thus, the availability of Plaintiffs' claims under the FTCA is a "special factor[] counselling hesitation." *Abbasi*, 137 S. Ct. at 1848.

Another special factor that gives the Court pause to extend *Bivens* "is the length of time Congress has gone without statutorily creating a *Bivens*-type remedy for this context."  *Cantú*, 933 F.3d at 423.  "Because Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts, its 'failure to provide a damages remedy' here suggests 'more than mere oversight.'"  *Id.* (citing *Abbasi*, 137 S. Ct. at 1857, 1862).  Plaintiffs allege in their Third Amended Complaint that it is not uncommon for probation officers to sexually assault people under their supervision.  ECF No. 38 ¶¶ 3–9.  And yet, Congress has declined to take any action to create a remedy in this context.  *See Carvajal v. United States*, No. 3:20-CV-567-S-BK, 2021 WL 2814883, at *5 (N.D. Tex. May 11, 2021), *R. & R. adopted*, No. 3:20-CV-567-S-BK, 2021 WL 2808966 (N.D. Tex. July 6, 2021); *see also* Gregory C. Sisk, *Holding the Federal Government Accountable for Sexual Assault*, 104 Iowa L. Rev. 731, 735, 740, 772–74 (2019) (acknowledging *Bivens* would not likely be extended to cases involving sexual assaults by federal employees and calling on Congress to amend the FTCA by repealing the intentional-tort exception so that sexual assault-and-battery survivors have a path to recovery).

At least one more reason exists for the Court to hesitate.  Plaintiffs' claims with respect to the Eighth Amendment are meritless.  *See Carvajal*, 2021 WL 2814883, at *5 (citing *Oliveras*, 440 F. Supp. 3d at 373–75 (declining to extend *Bivens* for a claim that rested on "a shaky legal foundation").  The Eighth Amendment applies only to constitutional deprivations suffered by

prisoners.[3]  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Neither Plaintiff was incarcerated when Defendant Bresnahan's alleged sexual assaults occurred, thus the Eighth Amendment does not apply to protect them.

For these reasons, the Court concludes it is not "well suited . . . to consider and weigh the costs and benefits of allowing a damages action to proceed" in this case.  *Abbasi*, 137 S. Ct. at 1858; *see also Ahmed v. Weyker*, 984 F.3d 564, 570 ("Congress is usually 'in the better position' to weigh the costs and benefits of creating 'a new substantive legal liability.'" (quoting *Farah*, 926 F.3d at 500)).  Providing Plaintiffs with a damages remedy against Defendant Bresnahan for their injuries lies with Congress.  *See Ahmed*, 984 F.3d at 567 ("[T]he separation of powers generally vests the power to create new causes of action in Congress, not [the courts].").  The Court therefore grants Defendant Bresnahan's Motion for Summary Judgment.[4]

## III.  CONCLUSION

For the foregoing reasons, the Government's Motion to Exclude Testimony of Plaintiffs' Expert Dr. John Patrick Cronin (ECF No. 165) is GRANTED IN PART AND DENIED IN PART.  The Court denies the Motion to Exclude with respect to Dr. Cronin's proposed causation testimony and grants the Motion with respect to Dr. Cronin's proposed testimony as to scope of employment.  The Government's Motion for Summary Judgment (ECF No. 172) is GRANTED as to Plaintiff McKinney's claims for assault, battery, and abuse of process and Plaintiff Ross's claim for abuse of process.  The Government did not move for summary judgment on Plaintiff

---

[3] Constitutional claims for violations of a pretrial detainee's rights are rooted in the Fourteenth Amendment.  *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006) ("[T]he Fourteenth Amendment affords pre-trial detainees at least as much protection as the Eighth Amendment does to convicted prisoners.").

[4] Moreover, because the Court granted the Government's Motion for Summary Judgment as to all of Plaintiff McKinney's claims and as to Plaintiff Ross's claim for abuse of process, those claims against Defendant Bresnahan are consequently barred.  *See* 28 U.S.C. § 2676.

Ross's claims for assault and battery, and these claims remain for trial.  Finally, Defendant

Bresnahan's Motion for Summary Judgment (ECF No. 179) is GRANTED.

IT IS SO ORDERED.

Dated this 27th day of August, 2021.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT